**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **JANE DOE, (H.E.W.), AN** | § | |
| **INDIVIDUAL,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RADISSON HOSPITALITY, INC.;** | § | **A-23-CV-1456-DII** |
| **ARBORETUM HOSPITALITY, INC.;** | § | |
| **COUNTRY INN & SUITES BY** | § | |
| **RADISSON, INC.; CHOICE HOTELS** | § | |
| **INTERNATIONAL, INC.; AMIN** | § | |
| **DEVELOPMENT CORPORATION;** | § | |
| **VHGI, INC.; VANTAGE** | § | |
| **FRANCHISING INC.; RED LION** | § | |
| **HOTELS CORPORATION; OM** | § | |
| **NAMA MAHA LAXMI, L.L.C.;** | § | |
| **WYNDHAM HOTELS & RESORTS,** | § | |
| **INC.; WYNDHAM HOTEL GROUP,** | § | |
| **LLC; BAYMONT FRANCHISE** | § | |
| **SYSTEMS, INC.; SUPER 8** | § | |
| **WORLDWIDE, INC.; LONGHORN** | § | |
| **HOTELS, L.P.; SARI ASSOCIATES,** | § | |
| **L.L.C.; DAYS INNS WORLDWIDE,** | § | |
| **INC.; RADIANT PROPERTIES,** | § | |
| **L.L.C.; A&D HOTEL, L.L.C.,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Before the court are five motions to dismiss and all related briefing: Defendants Choice

Hotels International, Inc. ("Choice"), Country Inn & Suites by Radisson, Inc. ("Country"), and

Radisson Hospitality, Inc.'s ("RHI," and collectively, the "Radisson Defendants") Motion to

Dismiss Complaint and Motion to Strike (Dkt. 48); Defendants Baymont Franchise Systems, Inc.

("Baymont"), Days Inns Worldwide, Inc. ("Days Inns"), Super 8 Worldwide, Inc. ("Super 8"),

Wyndham Hotel Group, LLC ("WHG"), and Wyndham Hotels & Resorts, Inc.'s ("WHR" and

collectively, the "Wyndham Franchisor Defendants") Motion to Dismiss (Dkt. 49); Defendant A&D Hotel, L.L.C.'s ("A&D") Motion to Dismiss (Dkt. 62); Defendant Longhorn Hotels, L.P.'s ("Longhorn") Motion to Dismiss (Dkt. 77); and Defendant Radiant Properties, L.L.C.'s ("Radiant") Motion to Dismiss (Dkt. 121).[1] All of the Defendants that filed motions to dismiss addressed in this report shall be referred to as the Moving Defendants, collectively.[2] After considering the parties' briefing and applicable law, the court now recommends the following.

## I.    BACKGROUND[3]

Plaintiff Jane Doe ("H.E.W.") filed this lawsuit seeking redress for having been trafficked at Defendants' hotels. Dkt. 1. H.E.W. brings perpetrator liability, beneficiary liability, and vicarious liability claims against various groupings of Defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq.* Dkt. 1 at 81–84. She also seeks to toll the statute of limitations on all her claims. *Id.* at 84–85.

H.E.W. alleges she was sexually trafficked from the summer of 2012 until February of 2014 after meeting her first trafficker who "provided her with drugs and lied about what he was requiring her to do." *Id.* at 9–10. Her traffickers then controlled her through physical violence, fear, threats, and drugs. *Id.* H.E.W. alleges she was sexually exploited at various hotels owned, operated, managed, and controlled by all Defendants; that Defendants knew or should have known trafficking was happening at their hotels based on their interactions with and observations of H.E.W., widespread public information about the prevalence of trafficking at Defendants' hotels, and/or reporting requirements between hotel staff, hotels, and their franchisors; and that

---

[1] The motions and related briefing were referred to the undersigned for a Report and Recommendation by United States District Judge, Robert Pitman, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Text Orders dated Oct. 18, 2024 and Nov. 6, 2024.

[2] Not all Defendants have moved to dismiss.

[3] At this stage of the litigation, all well-pleaded facts are taken as true.

Defendants knowingly received a financial benefit by providing venues for the exploitation of victims like H.E.W. in the form of room rental revenue. *Id.* at 10, 15. To support her claims, H.E.W. alleges Defendants should have known she was being trafficked because of signs that were apparent to hotel staff and management including the "effects on her appearance [and] demeanor" of her trafficking, that other girls were being trafficked at the hotels simultaneously, that the rooms were often paid for with cash or prepaid cards, the excessive use of sex and drug paraphernalia left in the rooms, the refusals of room service, and that the rooms had several male visitors daily who visited at unusual hours for short durations. *Id.* at 10, 17–18, 32, 63, 77.

The Moving Defendants filed their respective motions to dismiss arguing that H.E.W. failed to state any TVPRA claims against them (Dkts. 48, 49, 62, 77, 121), that H.E.W.'s allegations exceed the statute of limitations (Dkt. 48), and that H.E.W.'s allegations amount to impermissible group pleading (Dkts. 49, 121). The Radisson Defendants further moved to strike paragraphs from H.E.W.'s Complaint. Dkt. 48. H.E.W. filed responses to all of the motions, Dkts. 60, 59, 66, 83, 122, respectively. The Moving Defendants all replied, Dkts. 65, 64, 71, 92, 123, respectively. The court will first address the motions seeking to strike or disregard the Complaint. The court will then analyze whether H.E.W.'s claims are sufficiently pleaded.

## II.   MOTION TO STRIKE

The Radisson Defendants request that the court strike paragraphs 46–63 from the Complaint. Dkt. 48 at 20. When evaluating a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure, the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Such matters should be stricken only where they possess "no possible relation to the controversy." *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty.*,

Fla., 306 F.2d 862, 868 (5th Cir. 1962)) (internal alterations omitted). The decision to grant a motion to strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004), *aff'd on other grounds*, 277 F. App'x 483 (5th Cir. 2008). "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. May 6, 1993).

The Radisson Defendants allege paragraphs 46–63 include "salacious and impertinent details" that serve only to prejudice them and confuse the facts. The relevant paragraphs describe "[t]he widely known and pervasive relationship between sex trafficking and the hotel industry." Dkt. 1 at 10. At this stage, the undersigned finds that H.E.W.'s allegations in those paragraphs provide appropriate context to her suit and do not meet the standard for being stricken under Rule 12(f). The undersigned recommends denying the Radisson Defendants' Motion to Strike (Dkt. 48).

## III.   IMPERMISSIBLE SHOTGUN PLEADING

The Wyndham Franchisor Defendants and Radiant both argue H.E.W.'s Complaint consists of impermissible shotgun pleading. Dkt. 49 at 5–7; Dkt. 121 at 2–3. Group pleading or "shotgun pleading" is disfavored—a "sin"—in the Fifth Circuit. *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 & n.14 (11th Cir. 2015)). "This court has rejected the group pleading doctrine." *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015). Courts have identified four types of shotgun-style pleadings:

> [1] The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. [2] The next most common type . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. [3] The third type of shotgun

> pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. [4] Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants is responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Lubbe v. Milanovich*, No. A-18-CV-1011-RP, 2019 WL 13460015, at *7 (W.D. Tex. Aug. 30, 2019), report and recommendation adopted, No. 1:18-CV-1011-RP, 2019 WL 13460014 (W.D. Tex. Sept. 26, 2019) (quoting 5C CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1376 n.9.75 (3d ed.) (quoting *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-1323 (11th Cir. 2015))).

The Wyndham Franchisor Defendants argue that the Complaint "lumps" them together first with each other and then with the other "Franchisor Defendants" tracking with the rare, fourth type of shotgun-style pleadings. Dkt. 49 at 6. H.E.W. addresses each party and their connection to her allegations individually. Dkt. 1 at 5–8. WHR, H.E.W. alleges, is responsible for the liabilities of its predecessor entity related to franchising, controlling, and operating the Baymont Inn & Suites, Austin Days Inn, Airport Super 8, and University Super 8 hotels where H.E.W. alleges she was trafficked. *Id.* at 6–8. WHG is WHR's wholly owned subsidiary. *Id.* Baymont, Days Inns, and Super 8 are WHG's direct subsidiaries and WHR's indirect subsidiaries. *Id.* H.E.W. alleges that all five of these entities directly, or through their predecessors, "owned, operated, controlled, and/or managed the Austin Baymont, Austin Days Inn, Airport Super 8, and University Super 8 through the Wyndham franchising system." *Id.* at 8.

The Wyndham Franchisor Defendants argue that the Complaint leaves them "with no basis to understand what, if anything, each of them specifically is alleged to have done or not done, or what the basis for imputing liability might be." Dkt. 49 at 6. However, H.E.W.'s allegations make it clear that she is alleging WHR and WHG are liable for their roles in franchising, controlling,

and operating all the referenced hotels under their brand, and Baymont, Days Inns, and Super 8 are allegedly liable for the way they owned, operated, controlled, and/or managed their respective hotels. H.E.W. further alleges that the Wyndham Franchisor Defendants violated the TVPRA individually and jointly, so they are mutually responsible. Dkt. 1 at 71–74; *see Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct."). Finally, as H.E.W. indicates, the Wyndham Franchisor Defendants "are the ones who possess information about the respective roles that each played in the relevant conduct; nothing more is needed to give them fair notice." Dkt. 59 at 20.

Radiant raises the issue of shotgun pleadings to support its claim that H.E.W.'s Complaint lacks facts that plausibly suggest Radiant meets the standard for perpetrator or beneficiary liability. Dkt. 121 at 2–3. The undersigned will address the sufficiency of each claim below and finds no impermissible shotgun pleading with respect to the liability of either the Wyndham Franchisor Defendants or Radiant under the TVPRA.

## IV. MOTIONS TO DISMISS

### A. Standard of Review

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action,"

or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted) (quoting *Iqbal*, 556 U.S. at 680).

### B.    The Trafficking Victims Protection Reauthorization Act

The TVPRA defines sex trafficking and includes both a criminal provision and a civil penalty. 18 U.S.C. §§ 1591, 1595. The statute defines sex trafficking as:

Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States . . . harbors, . . . maintains, . . . or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act . . . shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). The civil penalty states that:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever *knowingly benefits*, or attempts or conspires to benefit, *financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter*) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added). These sections describe two possible civil liabilities under the TVPRA—perpetrator liability and beneficiary liability, respectively.

Perpetrator liability applies to whoever knowingly "harbors, . . . maintains, . . . or solicits by any means a person . . . to engage in a commercial sex act." 18 U.S.C. § 1591(a). Beneficiary liability applies to one who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

H.E.W.'s suit alleges various groups of Defendants are liable under perpetrator liability and beneficiary liability. Dkt. 1 at 81–83. Additionally, H.E.W. contends that the Radisson Defendants, the Wyndham Franchisor Defendants, and A&D are vicariously liable for the acts of their franchisees. *Id.* at 83–84. The Moving Defendants move to dismiss H.E.W.'s claims against them, arguing that she has failed to state a claim against them under the TVPRA based on beneficiary, perpetrator, or vicarious liability. Dkts. 48, 49, 62, 77, 121. The undersigned will address each claim in turn.

8

### C.    Beneficiary Liability under the TVPRA

H.E.W. alleges that all Defendants are liable as beneficiaries. Dkt. 1 at 82. She claims that each Defendant knowingly received a financial benefit from participating in a venture with traffickers, or with hotel franchisees, despite the fact that each Defendant knew or should have known that the traffickers, including H.E.W.'s traffickers, were engaged in violations of 18 U.S.C. § 1591(a). Dkt. 1 at 82–83. Therefore, H.E.W. claims that "each Defendant is liable as a beneficiary under 18 U.S.C. § 1595(a)." *Id.* Generally, the Moving Defendants argue that H.E.W. has failed to sufficiently plead they engaged in any venture that trafficked her or that they knew or should have known about H.E.W.'s trafficking as a result of that venture. Dkts. 48, 49, 62, 77, 121. The court will examine the elements of beneficiary liability, address the Moving Defendants' common arguments, and then turn to each motion's particular arguments.

### 1.    Elements

To state a claim for beneficiary liability, H.E.W. must allege that the Defendants: (1) knowingly benefited; (2) from participating in a venture; (3) that violated the TVPRA; and (4) the Defendants knew or should have known that the venture violated the TVPRA. 18 U.S.C. § 1595(a); *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553 (7th Cir. 2023).

### a.    Knowingly benefited

A plaintiff must allege the defendant "was aware that it was benefitting in some way from its participation in the venture . . . [but] the benefit need not take the form of profits that are the specific result of a sex-trafficking venture." *G.G.*, 76 F.4th at 564 (cleaned up).[4] Courts have found that alleging a defendant "benefits financially from room rentals and other incidentals recognized

---

[4] *See A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 8674205 (E.D. Va. 2020); *B.D.G. v. Choice Hotels Int'l, Inc.*, 2023 WL 5935646 (S.D. Ohio 2023); *G.G.*, 76 F.4th; *J.M. v. Choice Hotels Int'l, Inc.*, 2023 WL 3456619 (E.D. Cal. 2023); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021); *Doe #1*, 21 F.4th.

by renting rooms in which the Plaintiff was sex trafficked" is sufficient to allege this element. *A.D. v. Best W. Intl., Inc.*, No. 2:22-CV-650-JES-NPM, 2023 WL 2955711, at *6 (M.D. Fla. Apr. 14, 2023); *see also S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020). Furthermore, "[k]nowledge is an awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723–24 (11th Cir. 2021) (citing *Knowledge*, Black's Law Dictionary (11th ed. 2019)).

b.    Participation in a venture

"Participation in a venture" "does not require actual knowledge of criminal wrongdoing." *G.G.*, 76 F.4th at 559; *Doe #1*, 21 F.4th at 724. For beneficiary liability, it is sufficient to show "a continuous business relationship between the participant and the trafficker." *G.G.*, 76 F.4th at 559. "Where the participant provides assistance, support, or facilitation to the trafficker through such a [relationship], a court or jury may infer the participant and trafficker have a tacit agreement that is sufficient for participation under Section 1595." *Id.*; *see also Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (Souter, J.) (concluding that "participation" can be inferred, in part, where trafficker and civil defendants—the owners of a hotel the trafficker used for his venture—had similar prior dealings). The defendant need not have committed "some overt act that furthers the sex trafficking aspect of the venture" or have "associated" with the sex trafficker "for the purpose of furthering the sex trafficking." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 968–69 (S.D. Ohio 2019) (cleaned up). The ordinary meaning of the statutory language requires a plaintiff to allege that the defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 725; *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04933, 2022 WL 17363234, at *11 (S.D. Ohio Dec. 1, 2022) ("Here, [franchisor]

Defendants were involved in a business venture with the franchisee hotels[.]"); *C. T. v. Red Roof Inns, Inc.*, No. 2:22-CV-834-JES-KCD, 2023 WL 3510879, at *4 (M.D. Fla. Mar. 11, 2023) ("[T]o find the existence of a venture, the Court need consider only whether operating hotels is an enterprise involving risk and potential profit. Clearly, it is."). The "venture . . . need not be specifically a sex trafficking venture." *G.G.*, 76 F.4th at 554. It "can also be a business whose primary focus is not on sex trafficking," such as a commercial venture. *Id.* In sum, "[t]o survive a motion to dismiss, all that is necessary is for a plaintiff to allege such a 'continuous business relationship,' which gives rise to an inference, drawn in the plaintiff's favor, that the civil defendant facilitated the venture's success." *Id.* at 560.

### c.    Violation of the TVPRA

This element can be considered a predicate to a beneficiary liability claim. A plaintiff must plead sufficient facts to "plausibly allege that the venture in which franchisors participated committed [a crime under the TVPRA] against [the plaintiff]." *Doe #1*, 21 F.4th at 725.

### d.    Knew or should have known

The plaintiff must show that the defendant "knew or should have known" that the venture engaged in a violation Section 1591. *Id.* Plaintiffs are allowed to plead knowledge generally. *Id.*; FED. R. CIV. P. 9(b) ("knowledge[] and other conditions of a person's mind may be alleged generally"). However, the defendant must have, at minimum, constructive knowledge of a "non-generalized and non-sporadic—a particular—venture" that violated Section 1591, but the plaintiff need not show actual or constructive knowledge of a particular victim. *G.G.*, 76 F.4th at 557. Courts have found the knowledge element to be properly pleaded at the motion to dismiss stage when the plaintiff alleges that franchisor defendants were "on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence." *M.A.*, 425 F. Supp. 3d at 967; *see, e.g., T.E. v. Wyndham Hotels & Resorts, Inc.*,

No. 2:22-CV-3185, 2024 WL 474400, at *5 (S.D. Ohio Feb. 7, 2024) (finding constructive knowledge sufficiently pleaded where franchisor "had access to reservation, payment, internet, and public safety reporting data that reinforced the fact that, based on Plaintiff's pleadings, [the franchisor] was aware that sex trafficking in the industry not only occurred in their own branded hotels, but in the [franchisee hotel]"); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (finding knowledge element satisfied based on allegations of online reviews and police reports describing occurrence of sex work at franchisee hotel and other indicators of trafficking). The "should have known" language in Section 1595(a) implicates what is knowable through the exercise of ordinary diligence. Restatement (Second) of Torts § 12 (1965).

### 2. Common Legal Arguments

All Moving Defendants attempt to impute criminal liability standards into civil beneficiary liability. *See* Dkts. 48, 49, 62, 77, 121. They argue they cannot be liable because H.E.W. did not allege they participated in a venture that had the specific goal of sex trafficking or because they did not commit an "overt act" in furtherance of sex trafficking. To participate in a venture under Section 1595(a), "a defendant must take part in a common undertaking involving risk or profit." *Doe #1*, 21 F.4th at 727. Courts have rejected imputing a requirement that defendants knowingly assisted in sex trafficking to beneficiary liability under Section 1595. *G.G.*, 76 F.4th at 559; *Doe #1*, 21 F.4th at 724. A Section 1595(a) venture need not be a criminal trafficking venture, and a beneficiary's participation need not be direct participation in trafficking or an over act that furthers sex trafficking. *M.A*, 425 F. Supp. 3d at 968–70; *G.G.,* 76 F.4th at 561. Although the Fifth Circuit has not addressed this issue, the undersigned agrees with those courts that have held that beneficiary liability does not require civil defendants to knowingly assist sex traffickers in the sex-trafficking scheme. *See G.G.*, 76 F.4th at 559; *Doe #1*, 21 F.4th at 724. The undersigned further

joins courts that have rejected the idea that a civil defendant need commit an overt act specific to sex trafficking. *M.A*, 425 F. Supp. 3d at 968.

Some Moving Defendants also argue that they were not aware the venture violated Section 1591 specifically as to H.E.W. As explained above, H.E.W. need not initially plead that the Defendants had knowledge as to her case of trafficking—instead she may rely on their constructive knowledge of the existence of trafficking as a particular venture. *See* 18 U.S.C. § 1595(a); *G.G.*, 76 F.4th at 558; *Doe 1*, 671 F. Supp. 3d at 407. Wherever the Moving Defendants make this argument, H.E.W. alleges that "[o]ther girls were being trafficked at the same hotel at the same time." H.E.W. also alleges, as to some Defendants, that online reviews or records of calls to law enforcement regarding sex trafficking were made, making the Defendants aware of the particular venture involving H.E.W.'s trafficking. Dkt. 1 at 16–18, 31, 47, 50, 60, 75. H.E.W. must only allege that the Defendants had constructive knowledge of a particular venture that generally violated Section 1591. *G.G.*, 76 F.4th at 558.

### 3. The Radisson Defendants

H.E.W. alleges that in 2013 she was trafficked at the Austin Country Inn, which was owned, operated, and managed by the Radisson Defendants. Dkt. 1 at 3, 16. The Radisson Defendants argue that H.E.W. failed to allege they knowingly benefited from any of the elements. Dkt. 48. The Radisson Defendants also argue that H.E.W. failed to allege sex trafficking within the meaning of the statute. *Id.*

The court first addresses whether H.E.W. has alleged that she is a victim of sex trafficking under the TVPRA. The Radisson Defendants argue that H.E.W.'s Complaint includes only "labels and conclusions" that are insufficient to meet the statutory definition of trafficking which requires "means of force, threats of force, fraud, coercion . . . or any combination of such means will be

used to cause the person to engage in a commercial sex act." Dkt. 48 at 5; 18 U.S.C. § 1591(a)(2). The Radisson Defendants argue that H.E.W.'s allegations do not rise to the level of sex trafficking even if they rise to prostitution because she is lacking on the "force" requirement. Dkt. 48 at 5. They cite *L.M. v. 42 Hotel Raleigh, LLC* for the proposition that there is a "crucial distinction" between "prostitution and sex trafficking by force or fraud." Dkt. 48 at 6; *L.M. v. 42 Hotel Raleigh, LLC*, No. 5:23-cv-235, 2024 WL 631482, at *4 (E.D.N.C. Feb. 13, 2024). In *L.M.*, the plaintiff had alleged that she was a victim of sex trafficking based on the facts that "Hotel staff knew L.M.'s trafficker's 'pimp name' and used it to address him, that L.M.'s rooms were paid for in cash, that there was heavy foot traffic in and out of L.M.'s room, and that hotel staff observed L.M.'s traffickers on the premises." *Doe (L.M.)*, 717 F. Supp. 3d at 472.

H.E.W. similarly alleges that she was a victim of trafficking based on the use of cash payments and heavy foot traffic to rooms, but she does not solely rest on these allegations. Dkt. 1 at 17–18. H.E.W. also alleged that she was subjected to drugging, mental abuse, threats, and physical violence that caused visible injuries from her trafficker; that her trafficker began their relationship under false premises; that she feared her traffickers; that she was forced to pose for photographs so her traffickers could post ads for her; and that her demeanor and interactions with her traffickers reflected signs of coercion and control. Dkt. 1 at 9–10, 17–18, 85. These allegations regarding the inception of her trafficking, her mental state, and violence she experienced indicate the use of force, threats of force, fraud, and/or coercion to commit sex trafficking. *Id.* at 10; *Doe (L.M.)*, 717 F. Supp. 3d at 468 (citing 18 U.S.C. §§ 1591(a)). The court finds that H.E.W. has sufficiently alleged an underlying sex trafficking violation.

The Radisson Defendants argue that H.E.W. fails to plausibly allege that they knowingly benefited from her alleged trafficking. Dkt. 48 at 14. H.E.W. alleges that the Radisson Defendants

worked jointly with the Austin Country Inn Franchisee to rent rooms to H.E.W.'s traffickers; received revenue renting rooms to H.E.W.'s traffickers; continued to rent rooms to H.E.W.'s traffickers after they should have known of her trafficking; and derived a benefit from H.E.W.'s trafficking at their hotel. Dkt. 1 at 23–24. These kinds of financial benefits have been found to satisfy this element by other courts. *A. D.*, 2023 WL 2955711, at *6; *S.Y.*, 476 F. Supp. 3d at 1257. The court finds that H.E.W. has sufficiently alleged this element of beneficiary liability.

H.E.W. alleges the Radisson Defendants directly participated in two ventures that violated the TVPRA (1) by directly participating in renting rooms to traffickers through their oversight and management of the Austin Country Inn, and (2) by operating the Austin Country Inn with their franchisee[5] in such a way that facilitated widespread trafficking there. Dkt. 1 at 19–23. In the first venture, H.E.W. alleges that the Radisson Defendants continued renting rooms to H.E.W.'s traffickers despite having actual or constructive knowledge of the trafficking and that the Radisson Defendants created a favorable environment for trafficking in their franchisee properties with low risk of disruption and minimum traceability. Dkt. 1 at 17–18, 20–25. The Radisson Defendants argue that this is not actual participation and does not constitute an overt act in furtherance of the trafficking. Dkt. 48 at 7–8. As previously stated, participation in a venture does not hinge on active engagement in a sex-trafficking venture. *Doe #1*, 24 F.4th at 724–25. There is no general duty to prevent sex trafficking under the TVPRA,[6] but H.E.W.'s allegation includes that the Radisson Defendants had constructive knowledge of sex trafficking and continued the relationship. Dkt. 1 at 20. H.E.W.'s second claimed venture—between the Radisson Defendants and their franchisee

---

[5] The Austin Country Inn Franchisee is Arboretum Hospitality, Inc. ("Arboretum"). Dkt. 1 at 3. Arboretum has not filed a Motion to Dismiss at this time.

[6] *See, e.g. A.D. v. Choice Hotels Int'l, Inc.*, Case No. 2:22-cv-648, 2023 WL 5510267, at *4 (M.D. Fla. Aug. 25, 2013) ("The Complaint . . . fault[s] defendants for taking ineffective steps to curtail the traffickers. This hardly sounds like participating in a venture.").

operating the Austin Country Inn—suffices as "an enterprise involving risk and potential profit" sufficient to plead a venture under Section 1595. *Doe #1*, 21 F.4th at 725. At a minimum, H.E.W. has sufficiently alleged the Radisson Defendants' participation in at least one venture as defined under the TVPRA.

H.E.W., as noted above, sufficiently alleged she is a victim under Section 1591(a). Likewise, she sufficiently alleged she is a victim of one of the ventures alleged above because her trafficking occurred in the rooms rented by the Radisson Defendants and their franchisees to H.E.W.'s traffickers. Dkt. 1 at 16; *Doe #1*, 21 F.4th at 725.

Finally, the Radisson Defendants argue that H.E.W. fails to allege they knew or should have known they were participating in a venture that criminally violated Section 1591. Dkt. 48 at 12. H.E.W. alleges that the Radisson Defendants had actual and constructive knowledge that their hotel venture was engaged in sex trafficking based on: (1) their practice of monitoring and supervising the subject property, including monitoring "both news stories and online reviews for indicia of criminal activity, including sex trafficking"; (2) the "red flags" of trafficking observed by hotel staff such as "the hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards . . . [h]ousekeeping staff was often prevented from entering the room . . . heavy foot traffic in and out of [H.E.W.]'s room involving men who were not hotel guests . . . sex paraphernalia like condom wrappers and lubricant, as well as drug paraphernalia . . . [o]ther girls were being trafficked at the same hotel at the same time"; and (3) H.E.W.'s physical appearance and demeanor "were obvious and apparent to the staff and management of Defendants' hotels . . . Observing these effects provided Defendants with notice that H.E.W. was being continually subjected to coercion, control, and exploitation." Dkt. 1 at 10, 14, 16–18.

H.E.W. further alleges that the Radisson Defendants knew or should have known about such indicators of trafficking in the Austin Country Inn because they: (1) controlled and were responsible for the procedures to detect human trafficking at the Austin Country Inn; (2) assumed the responsibility to discover their high-risk hotels; (3) had access to surveillance systems; (4) collected and monitored data that showed patterns consistent with trafficking; and (5) chose not to implement policies to curb sex trafficking for fear of drawing negative public attention by acknowledging ongoing sex trafficking. *Id.* at 20–23. H.E.W. also alleges the Radisson Defendants' knowledge through an agency relationship with the Austin Country Inn Franchisee—listing at least 26 examples of how they exercised control over the franchisee hotel in support of her allegations of an agency relationship. *Id.* at 26–28. Courts have found such allegations sufficient at the motion-to-dismiss phase to establish a hotel franchisor's constructive knowledge of alleged trafficking occurring at their hotel. *M.A.*, 425 F. Supp. 3d at 967–68. Accordingly, the undersigned recommends denying dismissal of H.E.W.'s beneficiary liability claim against the Radisson Defendants.

### 4.    *The Wyndham Franchisor Defendants*

The Wyndham Franchisor Defendants raise objections to H.E.W.'s beneficiary liability claim based on the second and fourth elements of beneficiary liability. Dkt. 49 at 1. The Wyndham Franchisor Defendants also point to "a largely similar case filed by the same plaintiffs' counsel" where a judge in the Southern District of Texas concluded that dismissal was appropriate "because Plaintiff has not demonstrated more than a sheer possibility that Defendants knew or should have known of Plaintiff's sex trafficking." Dkt. 49 at 2; *Doe #9 v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 WL 1186333, at *2 (S.D. Tex. Mar. 30, 2021).

H.E.W. alleges the Wyndham Franchisor Defendants participated in: (1) an ongoing business relationship renting rooms to traffickers, including H.E.W.'s; and (2) ventures with the

Wyndham Franchisees[7] operating the Austin Wyndham Hotels[8] involving risks and profit. Dkt. 59 at 7, 10. This is sufficient to allege participation in a venture. *See Doe #1*, 21 F.4th at 727; *G.G.*, 76 F.4th at 560.

For the fourth element, H.E.W. does allege sufficient facts to distinguish her case from *Doe #9 v. Wyndham Hotels*. Like with the Radisson Defendants, H.E.W. alleges that multiple victims were trafficked at the Austin Wyndham Hotels specifically, Dkt. 1 at 60–62; that multiple victims were trafficked at these hotels before H.E.W. arrived and when she was there, *id.* at 60–61, 62–63; that hotel staff observed signs of this trafficking activity including the red flags of trafficking and H.E.W.'s appearance, demeanor, and interactions caused by the mental and physical abuse and drugging she endured, *id.* at 10; and that the Wyndham Franchisor Defendants knew or should have known about the problem because they required hotel staff and franchisees to report suspected criminal activity, including trafficking, to them, *id.* at 61–63. H.E.W. also alleges dozens of examples of news stories, reviews, and other public information showing that Wyndham was aware of the prevalence of sex trafficking at its properties due to many staff observations and customer complaints. Dkt. 1 at 47–59. These allegations have been found sufficient to establish the constructive knowledge of franchisor defendants. *S.Y.*, 476 F. Supp. 3d at 1257.

Furthermore, the specificity and breadth of these allegations is sufficient to bridge the scienter gap from "might have been able to guess" to "should have known." *See Doe #9*, 2021 WL 1186333, at *5 ("concluding that plaintiff had plausibly alleged 'defendants had actual and/or constructive knowledge about her sex trafficking as opposed to just sex trafficking problems in the hospitality industry in general' where allegations involved plaintiff's 'visibly deteriorating

---

[7] The Wyndham Franchisee Defendants include the non-moving Om Nama Maha Laxmi, L.L.C. of the Austin Baymont Hotel, Moving Defendant Radiant of the Austin Days Inn, Moving Defendant Longhorn of the Airport Super 8, and the non-moving Sari Associates, L.L.C. of the University Super 8.

[8] The Austin Baymont, Austin Days Inn, Airport Super 8, and University Super 8.

appearance, often avoiding all eye contact and displaying prominent bruising all over her person,' defendants' monitoring of criminal activity at their hotels, and hotel staff regularly reporting suspect activity") (citing *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 6318707 (N.D. Cal. Oct. 28, 2020). H.E.W. alleges the Wyndham Franchisor Defendants had knowledge of sex trafficking at the hotels where her trafficking took place and H.E.W.'s physical deterioration because of the control they exerted over their respective hotels and reporting requirements in place between the Wyndham Franchisor Defendants and their franchisees. This is sufficient knowledge at the motion to dismiss stage, to allege that "franchisor defendants had the requisite knowledge of a specific sex trafficking venture." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). The court finds that H.E.W. has sufficiently alleged a claim of beneficiary liability against the Wyndham Franchisor Defendants and recommends denying their Motion to Dismiss (Dkt. 49).

### 5.    *Defendant Longhorn*

Longhorn is the franchisee of the Super 8 by Wyndham, Austin Airport North location, ("Airport Super 8"). Dkt. 1 at 7. Longhorn "owned, operated, controlled, an/or managed" the Airport Super 8. *Id.* In its Motion to Dismiss (Dkt. 77), Longhorn argues that H.E.W. has not plausibly alleged a claim of beneficiary liability against it because H.E.W. has not sufficiently alleged (2) participation in a venture or (4) actual or constructive knowledge. *Id.* at 5–10.

Longhorn relies on *K.H. v. Riti*, a recent, unreported Eleventh Circuit case, to argue that it was not "taking part in a common undertaking or enterprise involving risk and potential profit" with H.E.W.'s traffickers. Dkt. 77 at 7; *K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *2 (11th Cir. Feb. 9, 2024). H.E.W. argues in response that her allegations center on business ventures, not sex trafficking ventures. Dkt. 1 at 68–70; Dkt. 83 at 8. A venture under Section 1595(a) need not be a sex trafficking venture and can be some other kind of business venture.

*G.G.*, 76 F.4th at 554. Longhorn's interpretation of *Riti* effectively removes the constructive knowledge language from § 1595(a), and so the court rejects this argument.

Furthermore, the court finds that H.E.W. has sufficiently alleged actual or constructive knowledge of trafficking based on the venture-level knowledge. Dkt. 1 at 60–63; *see G.G.*, 76 F.4th at 557; *Doe 1*, 671 F. Supp. 3d at 407 ("Knowledge [] is required with respect to the venture, not with respect to any particular person."); *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740 (C.D. Cal. 2024) (rejecting plaintiff-specific knowledge standard). Therefore, the court recommends denying dismissal of H.E.W.'s beneficiary liability claim against Longhorn.

### 6. Defendant Radiant

Radiant is the franchisee of the Austin Days Inn and "owned, operated, controlled, and/or managed" that property for the Wyndham Franchisor Defendants. Dkt. 1 at 7. Radiant argues that H.E.W. has not sufficiently alleged any beneficiary liability elements.[9] Dkt. 121 at 10–13.

H.E.W. alleges that Radiant knowingly received benefits from renting rooms to traffickers, including H.E.W.'s, and that Radiant took part in ventures involving profit and risk both with the traffickers that it rented rooms to—rooms where H.E.W. alleges her trafficking took place—and with its franchisors. Dkt. 1 at 68–70. H.E.W. further alleges that based on hotel reviews and records of law-enforcement calls, "there were multiple trafficking victims exploited" at the Austin Days Inn before H.E.W.'s trafficking there; she alleges the staff directly observed the "red flags of trafficking"; and that the hotel staff observed the effects of her trafficking, abuse, and drug usage on H.E.W. Dkt. 1 at 10, 60–61. The court finds H.E.W. has sufficiently alleged a claim of beneficiary liability against Radiant and recommends denying Radiant's Motion to Dismiss on this count. *See G.G.*, 76 F.4th at 553; *Doe #1*, 21 F.4th at 725. *A.D.*, 2023 WL 2955711, at *6.

---

[9] Like other Defendants, Radiant argues that H.E.W. must show specific facts as to how Radiant knew H.E.W. was trafficked at Radiant's property. Dkt. 121 at 11–12. The court has already rejected this argument.

7.    *Defendant A&D*

H.E.W. alleges that she was trafficked at the Orangewood Inn and Suites, operated and managed by A&D, on multiple occasions in 2012 and 2013. Dkt. 1 at 74. A&D moves to dismiss H.E.W.'s claim of beneficiary liability against it. Dkt. 62. A&D argues that the same standard for "participation in a venture" applies to both perpetrator and beneficiary liability and that H.E.W. does not plausibly allege A&D knowingly participated in a sex trafficking venture. Dkt. 62 at 3–4. As discussed above, beneficiary liability under Section 1595(a) requires actual *or* constructive knowledge that the venture violated the TVPRA and an entity does not have to engage in sex trafficking to be liable under beneficiary liability. 18 U.S.C. § 1595(a); *M.A.*, 425 F. Supp. 3d at 968–70; *see G.G.,* 76 F.4th at 553, n.4 (stating that courts "unanimously agree that a civil defendant under Section 1595 need not have violated Section 1591"). The court finds H.E.W. has made a sufficient claim of beneficiary liability against A&D and recommends denying A&D's Motion to Dismiss on this count.

### D.    Perpetrator Liability under the TVPRA

H.E.W. asserts a perpetrator liability claim against the "Franchisee Defendants" and the "Orangewood Inn and Suites Defendants" ("A&D").[10]  Dkt. 1 at 81. The "Franchisee Defendants" include some non-moving defendants and two Moving Defendants—Longhorn and Radiant, both franchisees of the Wyndham Franchisor Defendants. *Id.* at 8. A&D, Longhorn, and Radiant moved to dismiss H.E.W.'s perpetrator liability claims. Dkts. 62, 77, 121.

There are two ways to state a claim for perpetrator liability under the TVPRA. First, a plaintiff can demonstrate that the defendant: (1) violated 18 U.S.C. § 1591(a)(1) by knowingly

---

[10] H.E.W. appears to mislabel A&D, the operator of the hotel property called Orangewood, as multiple defendants. A&D is the only defendant to the suit that owns and operates the Orangewood Inn & Suites in Austin. Dkt. 62 at 4.

harboring, maintaining, or soliciting the plaintiff; and (2) knew or acted in reckless disregard of the fact that force, threats of force, fraud, or coercion would be used to cause the plaintiff to engage in a commercial sex act. 18 U.S.C. § 1591(a); *Harris v. Henry*, 2022 WL 16825200, at *5 (W.D. Tex. 2022). Second, a plaintiff can plead sufficient facts to show the defendant "knowingly benefited from a criminal venture engaged in one of those acts." *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-CV-06038-TMC, 2024 WL 3276417, at *9 (W.D. Wash. July 2, 2024). Under this second theory—the criminal venture theory—a plaintiff must show that a defendant derived a benefit from "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. §1591(e)(4). Furthermore, unlike a beneficiary liability claim, a civil perpetrator liability claim imports the criminal mens rea requirement of actual knowledge of sex trafficking by force or fraud. *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 473. (E.D.N.C. 2024).

H.E.W. relies on the "harboring" provision of Section 1591(a) in her allegations of perpetrator liability. Dkt. 1 at 82. She alleges that all Franchisee Defendants and A&D "harbored individuals . . . knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property." *Id.*

### 1.    *Defendant A&D*

A&D raises two objections to H.E.W.'s perpetrator-liability claim. Dkt. 62 at 2. First, A&D states nothing in the Complaint alleges that A&D or any of its employees engaged in "force, threats of force, fraud, coercion" or "recruited, enticed, harbored . . . or solicited Plaintiff to engage in any commercial sex act." *Id.* at 3. Second, A&D claims that it cannot be a perpetrator because it did not knowingly benefit from participation in a venture involving sex trafficking. *Id.* at 3–4. A&D

argues that H.E.W.'s allegations "must be sufficient to show that [A&D] knowingly participated in a sex trafficking venture." *Id.*

H.E.W. alleges that A&D was aware of a sex trafficking venture; that its staff observed the "red flags" of sex trafficking with regard to the number of men who were not hotel guests visiting H.E.W.'s rooms, using prepaid cards, refusing room service, and leaving behind sex and drug paraphernalia; that H.E.W.'s appearance and demeanor spoke to the threats of force and control being used over her; and that H.E.W. was beaten in the rooms at this hotel and bore visible injuries. Dkt. 1 at 10, 76–77. Allegations such as these, while sufficient under beneficiary liability's constructive knowledge requirement, are not sufficient to allege the actual knowledge or reckless disregard required for perpetrator liability. *Cf. Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) (finding actual knowledge and perpetrator liability where plaintiff alleged the named hotel operators ignored her direct pleas for help and witnessed her escape attempts and physical restraint by her trafficker). Therefore, the undersigned recommends granting dismissal of H.E.W.'s perpetrator liability claim against A&D.

### 2.    *Defendant Longhorn*

In its motion to dismiss, Dkt. 77, Longhorn argues that H.E.W. must allege facts that demonstrate Longhorn "had knowledge of, or recklessly disregarded, certain signs that [H.E.W.] would not have performed commercial sex acts at Longhorn's hotel but for the force, coercion or fraud used against her." *Id.* at 4. H.E.W. argues that "Longhorn had actual knowledge of H.E.W.'s trafficking or at least was willfully blind to it, but it still participated in a criminal venture by harboring her and knowingly facilitating her trafficking." Dkt. 83 at 15. H.E.W.'s allegations amount to constructive, not actual, knowledge. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 517–518 (S.D.N.Y. 2018) (holding that plaintiff must plausibly allege "knowledge that means of force

or fraud would be used to cause a commercial sex act to take place"); *Doe (L.M.)*, 717 F. Supp. 3d at 473. The undersigned recommends granting dismissal of H.E.W.'s perpetrator liability claim against Longhorn.

### 3.    Defendant Radiant

Radiant initially argues that the court lacks subject matter jurisdiction against it as Section 1591(a)'s first requirement "is that the actions are done knowingly or 'in or affecting interstate or foreign commerce.'" Dkt. 121 at 4. Radiant argues that it is a Texas LLC that owned the one hotel in Texas where H.E.W. was purportedly trafficked, so it does not affect interstate commerce. *Id.* at 4–5.

The TVPRA makes it clear that actions in interstate commerce or *affecting* interstate commerce are subject to the statute. 18 U.S.C. § 1591(a). The "phrase 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause." *United States v. Renteria*, 84 F.4th 591, 594–95 (5th Cir. 2023) (internal quotations omitted). H.E.W.'s allegations include the use of internet websites and here, a hotel associated with a national chain that services interstate travelers. Dkt. 1 at 9–10. These are facilities of interstate commerce which are sufficient to establish the element of "affecting interstate commerce." *United States v. Phea*, 755 F.3d 255, 266 (5th Cir. 2014) (noting that telephones, hotels, and the internet are facilities of interstate commerce); *see United States v. Rodriguez-Cruz*, 681 F. App'x 312, 313 (5th Cir. 2017) (non-precedential per curiam opinion) ("cell phones constitute facilities of interstate commerce and that their use, even if wholly intrastate, is sufficient to establish the 'in or affecting interstate or foreign commerce' element for federal crimes"). The court finds H.E.W. has sufficiently pleaded her claim affects interstate commerce and the court does not lack subject matter jurisdiction over these claims.

Radiant also argues that H.E.W.'s Complaint fails to join parties required by Federal Rule of Civil Procedure 19 and complete relief cannot be afforded because H.E.W. failed to join her alleged traffickers. Dkt. 121 at 13. Radiant cites no case law to support this argument. Courts have denied motions to dismiss, allowing complaints to move ahead, where hotel franchisors and franchisees are the sole defendants. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019). This court can accord complete relief among existing parties and does not find joinder necessary. FED. R. CIV. P. 19.

Radiant asserts H.E.W.'s allegations are insufficient to show that Radiant or its employees knowingly assisted, supported, or facilitated her traffickers to rise to the level of criminal venture which is a higher standard than set for beneficiary liability. Dkt. 121 at 8; *see E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021) (noting that the definition of 18 U.S.C. § 1591(e)(4) does not apply to beneficiary liability but does apply to perpetrator liability). The undersigned agrees that H.E.W.'s allegations do not amount to actual knowledge; therefore, the undersigned finds H.E.W.'s perpetrator liability claim against Radiant insufficient and recommends granting dismissal.

### E.    Vicarious Liability under the TVPRA

H.E.W.'s Complaint includes vicarious liability claims against the Radisson Defendants, the Wyndham Franchisor Defendants, and Defendant A&D. Dkt. 1 at 83. Each group moves to dismiss this claim. Dkts. 48, 49, 62. The undersigned addresses this claim in the event the District Judge does not adopt the undersigned's findings as to these Defendants' direct liability.

The TVPRA allows for third-party liability for a claim brought under Section 1595(a). *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284 (M.D. Fla. 2021); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-120, 2020 WL 9550005 (E.D. Va. Sept. 21, 2020). Courts have repeatedly rejected the argument that the TVPRA does not allow for vicarious liability and

have found ordinary principles of actual agency to apply. *E.g.*, *J.C.*, 2020 WL 6318707, at *8; *M.A.*, 425 F. Supp. 3d; *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-CV-656-BLF, 2020 WL 4368214, at *7 (N.D. Cal. Jul. 30, 2020). A defendant may be directly liable under the TVPRA as a beneficiary or perpetrator, as discussed in the previous sections, or a defendant may be vicariously liable under the TVPRA. To show vicarious liability, a plaintiff must allege (1) an underlying violation of the TVPRA by the defendant's franchisee and (2) that franchisors and their corresponding hotels were in an agency relationship. *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021); *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 939 (D. Ore. 2020).

H.E.W. seeks to hold the Franchisor Defendants (including the Radisson Defendants, the Wyndham Franchisor Defendants and A&D) vicariously liable for their franchisees' TVPRA violations. Dkt. 1 at 83. H.E.W. seeks this theory based on her allegations of perpetrator and beneficiary liability against the Franchisee Defendants. *Id.* As H.E.W. failed to adequately plead perpetrator liability with respect to the Radisson Defendants', the Wyndham Franchisor Defendants', and A&D's franchisees, she has failed to plead vicarious perpetrator liability. Accordingly, the undersigned turns to her allegations of vicarious beneficiary liability.

### 1.    The Radisson Defendants

The Radisson Defendants again argue that H.E.W. failed to allege an underlying violation of the TVPRA, which the court has already rejected. The Radisson Defendants then argue that H.E.W. failed to allege actual agency for a vicarious "beneficiary liability" claim. Dkt. 48 at 17. They contend that H.E.W. failed to allege facts sufficient to establish they were a joint employer of the staff at the hotel. Dkt. 48 at 19. In *C.S. v. Wyndham Hotels & Resorts, Inc.*, the district court found the complaint plausibly alleged the existence of an agency relationship where the franchisor exercised control over the means and methods of how its franchisees conducted business. *C.S.*,

538 F. Supp. 3d at 1299 (listing means such as "profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing"). H.E.W. alleges that the Radisson Defendants use various standards and rules to govern the methods used to operate the hotels, that they are directly involved with certain aspects of hotel operation, and they exert additional means necessary to protect their brand. Dkt. 1 at 20–29 (listing many means of control including standardized rules of operation, price fixing such as "room rates, required discounts, mandatory fees, and rewards programs," standardized training regarding "detecting and responding to human trafficking at the Austin Country Inn," and profit sharing). The undersigned finds sufficient allegations of control to support an agency theory and recommends denying dismissal of the vicarious liability claim.

### 2.    *The Wyndham Franchisor Defendants*

The Wyndham Franchisor Defendants' argument that they cannot be vicariously liable because there were not sufficient allegations of their franchisees' violations of the TVPRA is mooted by the undersigned's earlier finding that H.E.W. has alleged a TVPRA violation. *See, e.g.*, *J.L.*, 521 F. Supp. 3d at 1064 (recognizing that a vicarious liability theory against a hotel brand franchisor requires well-pled allegations that the franchisee is "plausibly liable under § 1595").

H.E.W. sufficiently alleges control by the Wyndham Franchisor Defendants over their franchisees. Dkt. 1 at 65–67, 70–74. H.E.W. further argues that the Wyndham Franchisor Defendants "have repeatedly litigated and lost Rule 12(b)(6) motions based on their agency relationship with hotel franchises in TVPRA cases." Dkt. 59 at 18 (citing *Doe v. Wyndham Hotels & Resorts*, 8:23-cv-01554, 2023 U.S. Dist. LEXIS 229694, at *17 (C.D. Cal. Nov. 13, 2023); *T.E.*, 2023 U.S. Dist. LEXIS 151985, at *26; *M.A.*, 425 F. Supp. 3d at 971.). The undersigned finds sufficient allegations of control in H.E.W.'s Complaint to support an agency theory and recommends denying dismissal of the vicarious liability claim.

*3.    Defendant A&D Hotel*

In H.E.W.'s Complaint, A&D is the only named Defendant for the Orangewood Inn and Suites where H.E.W. was allegedly trafficked. Dkt. 1 at 9. A&D moves to dismiss on the grounds that there are no other Orangewood Inn and Suites Defendants with whom A&D could have participated in a venture with under § 1595(a). Dkt. 62 at 4. A&D claims it "is the only defendant that owns and operates the Orangewood Inn & Suites in Austin." *Id.* A&D further argues that any liability under Section 1595(a) "still requires participation in a sex trafficking venture" which, as shown above is not necessary for beneficiary liability.

However, as the only Defendant with ties to the Orangewood Inn and Suites, and because H.E.W. makes no response to A&D's vicarious liability arguments, Dkt. 66, the undersigned recommends H.E.W.'s claim of vicarious liability against A&D be dismissed.

## IV.    STATUTE OF LIMITATIONS

The Radisson Defendants argue that H.E.W.'s claims are partially barred because the TVPRA has a ten-year statute of limitations. Dkt. 48 at 3. The statute provides that "[n]o action may be maintained under [§ 1595(a)] unless it is commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c).

H.E.W. alleges she was trafficked between 2012 and 2014. Dkt. 1 at 9–10. Specifically, she alleges she was trafficked at the Radisson Defendants' hotel, the Austin Country Inn, repeatedly throughout 2013. *Id.* at 16. H.E.W. brought suit on November 30, 2023, so the Radisson Defendants argue that her claims before November 2013 are time-barred. Dkt. 48 at 3. H.E.W. responds by raising both the continuing tort doctrine and the doctrine of equitable tolling. Dkt. 60 at 19–20. H.E.W. argues that she remained under the control of a trafficker through at least 2014, which limited her ability to discover and pursue her legal rights. *Id.* at 20. Whether the statute of limitations should be tolled in these circumstances involves "fact questions that are better resolved

28

at summary judgment." *See E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420 (N.D. Tex. 2021). The undersigned recommends that this issue be resolved at the summary judgment stage.

## V.    LEAVE TO AMEND

H.E.W. has requested leave to amend in response to every Motion to Dismiss should the court find that she has failed to plausibly plead any element of her claims. *See* Dkt. 60 at 20; Dkt. 59 at 20; Dkt. 66 at 13; Dkt. 83 at 16; Dkt. 122 at 18. If the District Judge does not adopt the undersigned's recommendations, the undersigned would recommend that any dismissal of H.E.W.'s claims be without prejudice and H.E.W. be allowed to amend her Complaint to address any deficiencies.

## VI.    RECOMMENDATIONS

For the reasons stated above, the court **RECOMMENDS**:

1.  The Radisson Defendants' Motion to Dismiss and its included Motion to Strike, Dkt. 48, be **DENIED**;

2.  The Wyndham Franchisor Defendants' Motion to Dismiss, Dkt. 49, be **DENIED**;

3.  A&D's Motion to Dismiss, Dkt. 62, be **GRANTED** as to perpetrator liability and vicarious liability and **DENIED** as to beneficiary liability;

4.  Longhorn's Motion to Dismiss, Dkt. 77, be **GRANTED** as to perpetrator liability and **DENIED** as to beneficiary liability; and

5.  Radiant's Motion to Dismiss, Dkt. 121, be **GRANTED** as to perpetrator liability and **DENIED** as to beneficiary liability and shotgun pleading.

## VII.    OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED January 21, 2025.

_____
Mark Lane
United States Magistrate Judge

30