IN THE UNITED DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JANE DOE, (H.E.W.), AN INDIVIDUAL, | § | CASE NO. 1:23-cv-01456-DII |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| RADISSON HOSPITALITY, INC.; | § | DEFENDANT A&D HOTEL |
| ARBORETUM HOSPITALITY, INC.; | § | L.L.C.'S  MOTION FOR |
| COUNTRY INN & SUITES BY RADISSON, | § | SUMMARY JUDGMENT |
| INC.; CHOICE HOTELS INTERNATIONAL, | § | |
| INC.; AMIN DEVELOPMENT | § | |
| CORPORATION; VHGI, INC.; VANTAGE | § | |
| FRANCHISING INC.; RED LION HOTELS | § | |
| CORPORATION; OM NAMA MAHA | § | |
| LAXMI, L.L.C.; WYNDHAM HOTELS & | § | |
| RESORTS, INC.; WYNDHAM HOTEL | § | |
| GROUP, LLC; BAYMONT FRANCHISE | § | |
| SYSTEMS, INC.; SUPER 8 WORLDWIDE, | § | |
| INC.; LONGHORN HOTELS, L.P.; SARI | § | |
| ASSOCIATES, L.L.C.; DAYS INNS | § | |
| WORLDWIDE, INC.; RADIANT | § | |
| PROPERTIES, L.L.C.; A&D HOTEL, L.L.C., | § | |
| Defendants. | § | |

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### **Introduction and Summary.**

Plaintiff, as a teen, began having drug addiction problems. As an adult, Plaintiff became involved in commercial sex to fund her drug addictions; first working in strip clubs, then in a massage parlor, and finally in prostitution. In the summer of 2013, Plaintiff began working in prostitution. After the Austin Police arrested her for prostitution and possession of drugs in February 2014, she went through a drug diversion program and ceased working in commercial sex. While in prostitution, she had three separate handlers.[1] (113). In November 2023, Plaintiff

---

[1] (1) Isaiah Recio, (2) Pee Wee Moore, (3) Oscar "Chilango" Olvera and his associate, Junior Arrellano. (#) refers to the last three digits in the red Bates number in the lower right-hand corner of each page of the incorporated by reference appendix filed with this motion.

1

filed suit against several Austin hotel operators and their franchisors asserting claims under the Trafficking Victims Protection Reauthorization Act (TVPRA). 18 U.S.C. §§ 1591, 1595. Plaintiff contends her handlers sexually trafficked her and that the named defendants financially benefitted from the trafficking.

The defendants filed motions to dismiss. The Court adopted (Dkt. 133) the Magistrate's recommendations on the motions to dismiss (Dkt. 126). The Magistrate recommended dismissal of two of the three claims Plaintiff asserted against Defendant A&D Hotel LLC ("A&D"): perpetrator liability and vicarious liability. In his ruling, the Magistrate stated that the remaining beneficiary liability claim against A&D and the limitation affirmative defense would be better addressed at the summary judgment stage.

Discovery has almost closed, and the uncontested facts establish A&D's entitlement to summary judgment on the beneficiary liability claim and the limitations defense. The beneficiary liability claim fails because the Plaintiff has no evidence and cannot create a genuine dispute on the absence of the following claim elements: (1) A&D knowingly benefited financially from Plaintiff's alleged trafficking, (2) A&D participated in a venture with the alleged traffickers, (3) A&D had knowledge of Plaintiff's alleged trafficking, and (4) the use of force, fraud, or coercion as a means for the Plaintiff's alleged trafficking.[2] 18 U.S.C. §1591(a)(2). Alternatively, the 10-year statute of limitations has run on the discrete alleged sex trafficking at A&D's hotel[3] and no doctrine militates against the running of limitations. Either means warrants judgment in A&D's favor on Plaintiff's remaining claim against A&D.

**Standard of Review**

---

[2] *E.S. v. Best W. Int'l, Inc.,* 510 F.Supp.3d 420, 426 (N.D.Tex.2021).
[3] The "A&D hotel" is also referred to the accompanying appendix records as the Orangewood.

If a plaintiff has the burden of proof on a claim, a defendant can obtain a summary judgment on that claim by either submitting evidence that negates a genuine dispute on an element of the claim[4] or by successfully challenging the existence of evidence to create a genuine dispute on each element of a claim[5]. FED. R. CIV. P. 56(a).[6] A defendant may also obtain a summary judgment by showing no genuine dispute on every element of an affirmative defense.[7] A dispute becomes genuine when a party presents admissible evidence that would allow a reasonable jury to return a verdict for that party.[8] Again, a defendant need not introduce any evidence to prevail on a claim the plaintiff has the burden to prove.[9] Additionally, if the defendant shows the lack of a genuine dispute on an affirmative claim element or on all elements of an affirmative defense, the plaintiff must then show a genuine issue for trial on each successfully challenged claim element and on each established element of an affirmative defense to defeat a summary judgment motion.[10] Conclusory factual statements, unsubstantiated assertions, improbable inferences, and unsupported speculation do not constitute competent summary judgment evidence and cannot defeat a motion for summary judgment.[11]

The court views the summary judgment evidence in the light most favorable to the non-movant.[12] Notwithstanding the evidentiary deference afforded the non-movant, if the movant

---

[4] *Lavespere v. Niagara Mach & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986).

[6] Most of the opinions cited in this brief involve motions to dismiss under FRCP 12(b)(6). Defeating a claim at the pleading stage presents a higher hurdle than that encountered at the summary judgment stage. The standard of review for a Rule 12(b)(6) dismissal motion on an affirmative defense is particularly daunting as a complaint need not anticipate or negate an affirmative defense. Thus, dismissal of an affirmative defense at the pleading stage becomes limited to complaints that make the affirmative defense apparent.

[7] *See Celotex Corp.*, 477 U.S. at 323.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

[9] *Id.* at 323.

[10] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[11] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

[12] *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011).

discharges its initial burden, the non-movant must set forth particular facts and evidence showing a genuine dispute for trial.[13]

## Evidence

A&D relies upon the accompanying, incorporated by reference affidavits Robert Mijlenovich (002) and M. Forest Nelson (109).

## Facts.

### HEW's Drug Addictions
HEW used marijuana before and during her alleged trafficking. (125)
HEW used cocaine a few times as teenager. (163)
HEW had rehab for PCP addiction before 2008 and relapsed after 2008. (125-27)
HEW was addicted to Vicodin. (130)
HEW fired by nursing home employer in 2013 for stealing Vicodin. (115)
HEW became addicted to methamphetamine in 2013. (141)
HEW did drug diversion after her arrest in February 2014. (154, 226)

### HEW's History Of Commercial Sex To Fund Her Drug Addiction
Before HEW began working at nursing home in 2011 she worked at strip club. (118)
HEW worked at Hot Bodies and Chicas Bonitas strip clubs before July 2013. (118-19)
HEW voluntarily worked at strip clubs. (249)
HEW voluntarily worked at commercial sex trade possibly to pay for drugs. (116)
HEW did not know if she used money made at strip clubs to buy drugs. (120)
HEW then worked at massage parlor doing masturbations for more money. (123)
HEW used money from massage parlor to buy drugs. (117)
HEW did not object to massage parlor posting her on Backpage. (121)
HEW had three alleged traffickers. (113)
HEW was trafficked by Peewee about two months (September/October). (223)
HEW trafficked by Oscar beginning in October 2013. (136-38)
HEW not beaten by Peewee, Oscar or Arrellano. (140)
HEW used money from trafficking with Oscar to buy drugs. (238)
HEW's alleged trafficking ran from July 2013 to February 3, 2014. (223)
HEW had no contact with any traffickers after leaving them. (159, 234, 280)

### HEW Had Multiple Opportunities To Report Alleged Trafficking
HEW met her father while trafficked by Recio and did not tell her father. (142-43,152,169)
HEW never told her mom during trafficking period. (153)
HEW did not tell manicurist about trafficking. (152)
HEW did not tell STD clinic about trafficking. (165)
HEW drove away in her car from Recio and spent a week in Shreveport (134)
HEW left Recio in her own car with her cell phone and ID. (129-30)

---

[13] *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

HEW considered calling police or sisters after leaving Recio and chose not to. (132-33)
HEW could have called her sisters when she left Recio but called Peewee. (131)
HEW left Peewee in her own car while he slept. (238)
HEW considered calling police after she left Peewee but chose not to. (137)
HEW never told the medical doctors she visited about trafficking. (165)
HEW never told any hotel staff about trafficking. (152)
HEW two weeks hiatus from alleged trafficking after Recio and Peewee. (134, 225)
HEW never told police who arrested her about trafficking. (004, 155)
HEW told Police she was not being forced into commercial sex. (150-51)
HEW didn't tell anyone related to her prostitution prosecution about trafficking. (155-56)
HEW rejected offers from arresting police for counseling to get out of sex trade (020)
HEW not ready to get out of sex trade after arrest. (020)
HEW first thought about bringing lawsuit in 2018. (124)

**HEW's Inconsistent Statements**
HEW participated in written discovery responses. (112)
HEW did not plan to change discovery responses. (162)
HEW understood import of providing verification for answers. (162)
HEW changed testimony on only using marijuana before alleged trafficking. (125)
HEW changed testimony on when Recio beat her to agree with photos. (143, 169)
HEW's facebook photos from August 2013 do not evince beatings. (143,168-75)
HEW's medical records had no reference to physical injuries, just STD testing. (178-184)
HEW changed testimony on Recio to Peewee taking her to visit her dad. (142,144)
HEW changed testimony on being sex trafficked in Louisiana. (134, 160-61)
HEW verified handlers did and did not give IDs at check-in. (269, 289)
HEW verified her handlers bribed staff, in depo HEW lacked any specifics. (158, 289)
HEW voluntarily took meth with third handler and commercial sex funded their habit, conflicts with depo forced to take meth. (225, 296)
HEW was not allowed to interact with anyone in hotel, conflicts with depo. (149,234,260)
HEW trafficked at A&D hotel from July 2013 to Feb. 3, 2014 (day after arrest). (223,237)
HEW trafficked at A&D hotel from 2012 through 2013, conflicts with depo. (114,224)
HEW had loud early morning parties at hotels that no one complained about. (310-12)

**The A&D Hotel Lacked Trafficking Indicia**
A&D Hotel was a Ramada Inn franchise until the end of 2012. (316)
A&D Hotel had the Ramada franchise red décor in 2012 through February 2014. (307)
A&D Hotel was an approved South by Southwest hotel in 2012. (297)
HEW never encountered police raids at any of defendant hotels. (163)
HEW verified A&D hotel had an orange color scheme in 2013 and most of 2014. (268)
A&D changed its room décor in late-2014 to orange curtains and bed accents. (298,306)
Austin Police did not identify A&D Hotel as complicit in trafficking. (005)
A&D Hotel has interior entry doors and interior monitored cameras. (004)
Austin Police had crime watch meetings at A&D Hotel in 2013 and 2014. (004)
Austin Police would not hold crime watch meetings at hotels suspected of trafficking. (004)
HEW never had sex with any hotel employee. (139)
HEW doesn't know of any hotel employees assisting traffickers. (139)

5

HEW can't identify hotel housekeeping or staff that saw her trafficked. (148)
HEW doesn't recall specific instance of going to front desk to extend stay. (149)
HEW concealed her trafficking for fear of retribution. (153)
No police call sheet for A&D hotel had a sex trafficking dispatch code. (004, 042-71,095)
No police written reports for A&D Hotel were for sex trafficking. (004)
HEW's experts had A&D hotel internet reviews regarding trafficking or prostitution. (219)
HEW has no evidence of her or her alleged traffickers staying at A&D hotel.
The Austin Police did not see sex trafficking indicators from HEW's arrest. (004)
HEW gave no sex trafficking details for any hotel during her arrest. (004)
No evidence of HEW's alleged handlers ever being arrested for sex trafficking.
No evidence of HEW or her alleged handlers having link to any A&D hotel employee.
No other person has claimed being trafficked at the A&D Hotel.
No evidence of commercial sex ads posted on the internet for A&D Hotel.
A&D had exterior cameras, monitors, exterior lights, and personnel that walked the property at night. (318)
A&D did not have pay-for-view movies. (315)
A&D blocked porn sites on its wi-fi service. (317)

## Grounds for Summary Judgment.

### A.    Beneficiary Liability

A section 1595(a) beneficiary liability claim has three elements: (1) the defendant knowingly benefitted financially or by receiving something of value, (2) from participation in a venture, and (3) the defendant knew or should have known the venture constituted sex trafficking under section 1591.[14] One factor within the third element must also be established: section 1591 sex trafficking must emanate from means or threats of force, fraud or coercion. 18 U.S.C. §1591(a)(2). The three elements and one factor are conjunctive material facts.

### A&D DID NOT KNOWINGLY BENEFIT

Plaintiff has no evidence of the "knowingly benefit" element other than her conclusory allegations of being sexually trafficked at the A&D hotel by traffickers that paid for the hotel room. A&D disputes (1) that Plaintiff was trafficked at the A&D hotel and (2) that the alleged traffickers paid for rooms at the A&D hotel.

---

[14] *E.S. v. Best W. Int'l, Inc.,* 510 F.Supp.3d 420, 426 (N.D.Tex.2021).

<u>A&D DID NOT PARTICIPATE IN A VENTURE</u>

The TVPRA defines "participation in a venture" as knowingly assisting, supporting or facilitating a criminal violation of the TVPRA. 18 U.S.C. § 1591(e)(4). The Fifth Circuit has not weighed in on what fact patterns constitute "participation in a venture." The Eleventh Circuit has, by holding a defendant's acquiescence will not suffice as participation in a venture. *See Doe #1 v. Red Roof Inns*, 21 F.4th 714, 726-27 (11th Cir. 2021); *K.H. v. Riti, Inc.*, No. 23-11682, 2024 U.S. App. LEXIS 3127, 2024 WL 505063, at *7 (11th Cir. Feb. 9, 2024)(per curiam). To participate, A&D employees must take part in a common undertaking with the trafficker, i.e., A&D employees must take some action in common with the trafficker that furthers the trafficker's illegal object.[15] In *Riti*, the plaintiff alleged (1) that she had been trafficked at the defendant's hotel for four years, (2) that the defendant received the benefit of room rents, and (3) that online reviews, police reports, and visible indicators showed sex trafficking. The Eleventh Circuit did not find those allegations sufficient to meet "participation in a venture" because the hotel employees and the trafficker did not act in common to advance trafficking.

Moreover, the TVPRA at Section 1591(e)(6) defines a "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." The term "individual" denotes a natural person.[16] By definition, under the TVPRA, you need at least one trafficker and one hotel employee that are factually – not theoretically or presumptively – associated to traffic the plaintiff or you need a sufficient ongoing business relationship between the hotel and the trafficker to establish a tacit agreement to participate in a venture. Accordingly, at the summary judgment stage, a plaintiff must present admissible evidence of a direct association between a

---

[15] *G.W. v. Northbrook Indus., Inc.*, 739 F.Supp.3d 1243, 1248 (N.D.Ga. 2024).
[16] *Thaler v. Vidal*, 43 F.4th 1207 (Fed.Cir. Aug. 5, 2022).

hotel employee and a trafficker or evidence of an ongoing business relationship between the hotel and the trafficker. Plaintiff cannot create a genuine dispute on the lack of either fact pattern.

Plaintiff has no evidence of a direct association regarding an A&D employee and any of her alleged traffickers. Plaintiff could not identify one person at the A&D hotel who had an association with any of her alleged traffickers – no evidence of money changing hands, no exchange of rooms for sex, no high fives, not even one employee name. (139, 158). Plaintiff had no knowledge of any of the hotel defendants having an ongoing business relationship with any of the alleged traffickers by assisting in or facilitating the traffickers' crimes. (139). Plaintiff relies upon her inconsistent memory of being at the Orangewood for approximately a week over a few months. (223). A federal court in Washington state granted a hotel summary judgment for lack of direct association and an ongoing business relationship. For the ongoing business relationship, the Washington plaintiff alleged being trafficked 30-60 days at the hotel[17]. Additionally, in the Washington case: the plaintiff had a booking receipt for the hotel; the plaintiff's handler was arrested for trafficking; and, in a deposition photo line-up, the plaintiff correctly identified the hotel manager that had exchanged rooms for sex. Nothing in this case even approaches the Washington court's case facts. Just as in the Washington case, our plaintiff cannot demonstrate a genuine issue on the existence of a venture or participation in a venture, which merits summary judgment for A&D.

A federal court in Dallas, moreover, has followed the Eleventh Circuit's reading of the TVPRA by holding that "participation in a venture" requires "an alleged participant have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction." *Doe v.*

---

[17] *Doe v. Hilton Domestic Operating Co.,* 2025 U.S.Dist. LEXIS 154787 **33-37 (W.D.Wa. Aug. 11, 2025).

*Salesforce, Inc.*, 2024 U.S. Dist. LEXIS 55995, *37 (N.D.Tex Mar. 28, 2024). In granting dismissal, the Dallas court recognized that observing signs of sex trafficking does not equate to participating in sex trafficking. *Id.* There is no evidence of a common undertaking between A&D and the alleged traffickers, as HEW has not presented evidence or even alleged that A&D employees acted as lookouts for police, that A&D employees allowed solicitation of sex on the premises, that A&D employees bartered free rooms for sex, that A&D employees supplied condoms, or that A&D supplied a means for writing sex ads on the internet.[18]

Plaintiff also has no implicit evidence of an ongoing association. Plaintiff did not provide any evidence of her being beaten at the A&D hotel or of a police call to the A&D Hotel regarding her. Plaintiff had no medical records or photographs showing physical abuse. Indeed, Plaintiff testified to loud drug parties at the A&D Hotel, but when questioned on the specifics, she could not recall one police call, one room call, one front desk call, or anyone even knocking on her door to quiet down. (310-12). Plaintiff has not alleged or shown that A&D had any prior commercial dealings with any of the alleged traffickers that A&D desired to reestablish, as in *Ricchio*[19].

Plaintiff also lacks evidence of online reviews, police reports, or any other documents indicating sex trafficking occurred at the A&D Hotel. Just the opposite, the Austin PD officer that oversaw the vice squad and was noted in Plaintiff's 2014 prostitution arrest report (Officer Miljenovich) testified there were no sex trafficking investigations, stings, covert operations, calls, or arrests involving the A&D Hotel in 2013 and 2014. (003-05). Miljenovich further testified that the Austin police department held crime prevention meetings at the A&D Hotel

---

[18] *See A.D. v. Holistic Health Healing, Inc.*, 2023 U.S.Dist. LEXIS 32258 *3 (M.D.Fla. Feb.27, 2023); cf. .*R. v. I Shiri Khodiyar, LLC,* 2024 U.S.Dist. LEXIS 80748 **6-7 (N.D.Ga. Mar. 18, 2024).
[19] *Ricchio v. McLean*, 853 F.3d 553 (1st Cir.2017).

(004). South by Southwest placed A&D hotel on its courtesy bus route list for attendees. (297). Even Plaintiff's expert Rochelle Keyhan agreed that if presented with such facts from Austin police officers, she would change her opinion of the A&D hotel.

When faced with much more compelling trafficking allegations that the court had to accept as true, the Eleventh Circuit twice upheld a hotel's Rule 12(b)(6) dismissal by stating that "allegations of financial benefit alone are not sufficient to establish that a defendant participated in a sex trafficking venture and observing signs of sex trafficking 'is not the same as participating in it.'" *Id.* (quoting *Red Roof Inns*, 21 F.4th at 726). District courts have also granted summary judgments on allegations more compelling than those in this case.[20] Here, HEW has had ample time to develop trafficking participation facts and has failed to. Unable to create a genuine dispute on participation in a venture warrants summary judgment in A&D's favor on the TVPRA beneficiary claim.

## A&D LACKED KNOWLEDGE OF THE SPECIFIC TVPRA VIOLATION

A "TVPRA violation" reflects a key component of this material fact. A hotel's actual or constructive knowledge of prostitution or other commercial sex activities will not satisfy this element. The hotel must have knowledge that force, fraud, or coercion precipitated the commercial sex - as set forth in section 1591(a). In *Doe v. Hyatt*, 2025 U.S.Dist. LEXIS 135355 ** (N.D.Tex. July 15, 2025), Judge Godbey expounded on the need for specific evidentiary facts that plainly distinguished knowledge of prostitution from that of sex trafficking:

> Here, Doe's allegations fail because the plaintiff-specific facts alleged in the Complaint are not sufficient to put any hotel defendant on notice of sex trafficking as opposed to commercial sex generally. Doe alleges the hotels

---

[20] *G.W. v. Northbrook Indus., Inc.*, 739 F.Supp.3d 1243 (N.D.Ga. 2024). (the hotel had exterior doors, the front desk talked to the traffickers about opening the door for the plaintiff after she had been locked out of the room, plaintiff loitered in provocative clothes in the hotel lobby, plaintiff walked the street outside the hotel soliciting clientele, plaintiff purchased condoms and hygiene supplies from the front desk, and the trafficker was armed when he was arrested.)

> should have known of her sex trafficking based on various "obvious signs" from her and her trafficker including: (1) paying for the rooms with cash; (2) renting two rooms at a time; (3) keeping housekeeping away with a "do not disturb" door sign despite staying for multiple days; (4) preventing housekeeping from entering the room while frequently placing towels outside the door and asking for fresh towels and sheets; (5) the trafficker lingering in the hotel or parking lot while Doe was with a "john"; (6) Doe being dressed in provocative clothing and walking johns past the front desk; (7) heavy foot traffic in and out of Doe's room involving non-hotel-guest men; and (8) five to six johns entering the hotel per day at odd hours. . . . These alleged facts may be sufficient to say an observer should have known of commercial sex. But TVPRA does not prohibit all commercial sex, only that which is procured through "means of force, threats of force, fraud, coercion . . . or any combination of such means."

*Id.* at *15. The allegations in *Hyatt* parallel those in this case. Plaintiff's allegations evince commercial sex, not trafficking, and Plaintiff's evidence of A&D knowing of specific TVPRA violations is nonexistent. Photos of Plaintiff during the timeframe she was allegedly trafficked at the A&D Hotel do not indicate physical injuries and Plaintiff has no medical records supporting physical injuries during the relevant time period. (143,168-75, 178-84).

To satisfy sex trafficking constructive knowledge, the *Hyatt* court cited cases in which the trafficker exhibited brutal behavior to a physically deteriorating plaintiff[21], the plaintiff had visible physical injuries and pled for help[22], or the hotel staff observed the plaintiff with bruising and signs of fear[23]. *Hyatt* at *16. According to the Plaintiff, neither the second nor the third trafficker, who entered the picture after August 2013, physically abused her. (140). Plaintiff's uncorroborated statements of constructive knowledge may put someone on notice of commercial sex, but that does not equate to knowledge of sex trafficking – actual or constructive.

The record in this case provides no support for Plaintiff's knowledge contentions either. In her deposition, Plaintiff testified that the only trafficker that physically abused her was her

---

[21] *Ricchio*, 853 F.3d at 557.

[22] *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959, 962, 968 (S.D. Ohio 2019).

[23] *Doe (A.R.J.) v. Wyndham Hotels & Resorts, Inc.*, 2024 U.S. Dist. LEXIS 156829 *2, 6 (W.D. Tex. 2024)

first trafficker, who physically abused her in July or August of 2013. (143,169). Plaintiff visited a public STD/HIV clinic in September 2012, May 2013, and on July 17, 2013. (178-184). At the July 2013 visit Plaintiff tested positive for bacterial vaginosis and the doctor discussed safer sexual practices with the Plaintiff, but the medical records made no mention of bruising, physical abuse, or sex trafficking, which a doctor would have noted, and in all likelihood reported. (182-184). The clinic records made no reference to physical abuse reporting to any authorities. (182-184). Additionally, August 2013 Facebook photos of the Plaintiff showed no signs of bruising, physical injuries, malnutrition or physical deterioration. (168-75).

Public records from the Austin police also fail to support Plaintiff's contention that A&D had knowledge of trafficking at the A&D Hotel. (004). The Austin police arrested the Plaintiff for prostitution not trafficking (011) and the police logs make no mention of any sex trafficking dispatches or calls to the A&D Hotel. (004:Dispatch Code 4199). During her arrest interview, the Plaintiff told the Austin police that her last alleged trafficker was one of her best friends: he taught her everything she knew. (020). And when offered assistance by one of the arresting Austin police officers to get out of the commercial sex trade, Plaintiff thanked the officer but admitted she was not sure she wanted out of the industry yet. (020).

Plaintiff further testified that her drug addictions propelled her into the commercial sex trade business: first into strip clubs and then into massage parlors. (116-17). Plaintiff's drug addictions also guided her into the commercial sex trade with her last two alleged traffickers in October 2013. (225). Plaintiff voluntarily sought out STD/HIV testing as early as September 2012, well before any alleged trafficking at the A&D hotel in July 2013. (178-84). Plaintiff had been in the commercial sex trade since at least 2011. (118). Neither force, coercion, nor fraud drove the Plaintiff into the commercial sex trade, her addiction to drugs drove her into the trade

well before the alleged trafficking. Plaintiff lacks evidence of A&D having knowledge, either actual or constructive, of any sex trafficking occurring at the A&D hotel in 2013 or 2014. Absent evidence to create a genuine dispute on A&D hotel's lack of knowledge of sex trafficking and of force, fraud, and coercion, A&D is entitled to summary judgment.

### B.  Limitations

<u>Limitations Period 10 years – Discrete Accrual Date For Each Alleged Trafficking Event</u>

A federal action for sex trafficking an adult has a 10-year limitations period. 18 U.S.C. §1595(c)(1). The TVPRA's unambiguous language provides that "no action may be maintained …unless commenced **<u>no later</u>** than . . . 10 years after the **<u>cause of action arose</u>**." 18 U.S.C. §1595(c). A cause of action arises when the plaintiff has a complete and present claim.[24] Upon each alleged trafficked sexual act, a TVPRA cause of action would accrue. Consequently, trafficked sexual acts that occur beyond the limitations period will not support a TVPRA claim, even though alleged, discrete trafficking acts may extend into the limitations period.[25] Plaintiff filed her complaint on November 30, 2023; accordingly, limitations would bar claims on any complained of conduct predating December 1, 2013. Moreover, no tolling or deferral of the accrual date would extend the limitations period beyond December 1, 2013.

Plaintiff lacks admissible evidence of when she was trafficked at the A&D hotel and relies upon her inconsistent uncorroborated evidence. Plaintiff contends she was trafficked by Recio in August 2013, but her testimony and photos of her in August 2013 belie such contentions. Plaintiff testified that Peewee did not allegedly traffic her at the A&D hotel. And Plaintiff's testimony that

---

[24] *Gabelli v. S.E.C.*, 568 U.S.442, 448 (2013).

[25] *Fei Fei Fan v. Yanyao Jiang*, 2023 U.S.Dist. LEXIS 160054 *10, (D.Nev. Sept. 9, 2023) reversed in part on other grounds, 2024 U.S.App. LEXIS 30690 *2 (9th Cir. Dec. 5, 2024) *cert. denied,* 2025 U.S.LEXIS 3197 (U.S., Oct. 6, 2025); *see also H.G. v. Inter-Continental Hotels, Corp.,* 489 F.Supp.3d 697, 710 (E.D. Mich. 2020); *Ardolf v. Weber*, 2020 U.S.Dist. LEXIS 159289 (S.D.N.Y. Sept. 1, 2020); *K.O. v. G6 Hosp.L.L.C.,* 728 F.Supp.3d 624, 639 (E.D.Mich. 2024); *K.A. v. 26th St. Hosp., LLP,* 2024 U.S.Dist. LEXIS 87132 *22 (D.N.D. Apr. 15, 2024); *Marcyt C. MGM Resorts, Int'l*, 2025 U.S.Dist. LEXIS 224307 *9 (D.Nev. Nov. 13, 2025) .

13

Oscar had loud, dope infused parties when allegedly trafficking her at the A&D hotel lacks credibility. A&D Hotel is entitled to summary judgment on its limitations affirmative defense, and no deferral of the accrual date or tolling doctrine precludes a summary judgment.

<u>Discovery Rule Does Not Apply</u>

Plaintiff has alleged the discovery rule defers the accrual date for her claims. (Dkt. 1, ¶245). The discovery rule does not apply to TVPRA claims because the statute provides that "no action may be maintained …unless commenced **no later** than . . . 10 years after the **cause of action arose**." From its unambiguous language, the TVPRA makes no provision for the discovery rule. Once the plaintiff suffers a discrete legal injury of sex trafficking the limitations meter starts running. A Nevada court described the inapplicability of the discovery rule as follows:

> The Court finds that the discovery rule does not apply to the TVPRA. The TVPRA's text states: "No action" for "a violation of this chapter" may be brought any "later than the later of" "10 years after the cause of action arose" or "10 years after the victim reaches 18 years of age." 18 U.S.C. §§ 1595(a), (c). Considering a statute of limitations that likewise ran from "the date on which the cause of action arose," the Supreme Court held that this language "incorporates the standard rule that the limitations period commences when the plaintiff has 'a complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98, 61 S. Ct. 473, 85 L. Ed. 605 (1941)). A plaintiff has a "complete and present cause of action" once she "has a right to commence it." *Gabelli*, 568 U.S. at 448. The TVPRA's accrual language does not wait until the plaintiff has "discovered" his cause of action, but rather commences when the cause of action arose. Thus, the TVPRA's text does not appear to incorporate the discovery rule.

*CC. v. Jamal F. Rashid*, 2025 U.S.Dist. LEXIS 122420 **13-14 (D.Nev. June 26, 2025); accord

*Chirstina T. v. Bellagio LLC*, 2025 U.S.Dist. LEXIS 205896 (D.Nev. Oct. 17, 2025).

14

Plaintiff's claims accrued each time she was allegedly sex trafficked. Limitations would bar all of the Plaintiff's alleged sex trafficking claims that accrued before December 1, 2013,[26] and the discovery rule would not excuse or cure any delay in bringing such stale claims.

Equitable Tolling Does Not Apply

Plaintiff also alleged equitable tolling in an attempt to extend the limitations period to the end of her averred trafficking. (Dkt. 1, ¶247). Equitable tolling will not extend the limitations period either. The court in *Levin v. Sarah Lawerence Coll.*, 747 F.Supp.3d 645, 671 (S.D.N.Y. 2024) ably set out the inequity of having a hotel that allegedly profited from the plaintiff's trafficking early on being subject to TVPRA liability for a protracted period of time – "even if the hotel long ago ceased to provide any support to the trafficking or ceased to receive any benefit." *Id.* Notably, in *Sarah Lawrence*,

The Plaintiff has the burden to establish equitable tolling's two elements: (1) the plaintiff pursued her rights diligently, and (2) some extraordinary circumstance stood in her way and prevented her from timely filing. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016). Plaintiff lacks evidence to present a genuine issue on either element and A&D has shown that no genuine dispute exists as to the absence of either material fact for equitable tolling.

Plaintiff cannot show a genuine issue on her failure to pursue her rights diligently. Plaintiff has no evidence of her being unable to investigate her claims, identify the responsible parties, or seek legal representation. Plaintiff has never asserted she did not know what her claims were or who she believed was responsible for her alleged trafficking. Plaintiff took no steps to seek legal representation, although she had legal counsel represent her in the prostitution

---

[26] Plaintiff filed her original complaint in this action on November 30, 2023 (Dkt. 1).

and drug possession criminal proceedings and she went through a drug diversion program after her arrest. (155-56). Plaintiff has also testified she escaped from her first handler in her own car, she never had contact with the first handler again, she called a friend on her cell phone, she stayed with a friend, and she was free to contact anyone during her stay with her friend. (129-30,132-34). The same scenario occurred with Plaintiff's second handler who she just walked out on. (137, 38). Plaintiff met her third handler at a late-night party she freely attended with friends. (225, 296). Plaintiff had no contact with any of her handlers after she left them and she was not trafficked after her prostitution arrest in February 2014. Still, she did not file suit until late November 2023 and contemplated filing suit in 2018. (124).

Similarly, Plaintiff cannot demonstrate a genuine issue on an extraordinary circumstance that stood in her way. For an extraordinary circumstance, Plaintiff asserts she was beaten, drugged, sexually assaulted, mentally abused and under continuous control by her traffickers. (Dkt. 1, ¶¶ 247-49). Not only do the facts fail to support Plaintiff's asserted extraordinary circumstance, legal precedent also undercuts any such assertion.

In *Levin v. Sarah Lawrence Coll.*, 747 F.Supp.3d 645 (S.D.N.Y. 2024) the court rejected a similar equitable tolling argument in a Rule 12(b)(6) motion. Before the court considered the motion to dismiss, the trafficker in *Levin* had been tried and sentenced to 60 years in prison. The *Levin* plaintiff made conclusory allegations of torture and sequestration similar to those in this case. *Levin* at 672. The *Levin* court noted that the term "extraordinary" referred to the severity of the obstacle impeding the plaintiff's compliance with the limitations period.[27]  The *Levin* court

---

[27] *Levin*, 747 F.Supp.3d at 674(quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)).

also noted that access to counsel did not constitute extraordinary circumstances[28] and described

the burden a plaintiff has to invoke the equitable tolling doctrine in a TVPRA claim.

> because the "burden of demonstrating the appropriateness of equitable tolling
> . . . lies with the plaintiff, . . . [a] conclusory and vague claim, without[a]
> particularized description of how her condition adversely affected her
> capacity to function generally or in relationship to the pursuit of her rights, is
> manifestly insufficient to justify any further inquiry into tolling." . . .
> . Because her "assertions fail to describe her impairment with particularity
> and also fail to demonstrate a causal connection between how she felt and her
> ability to pursue her rights," equitable tolling is inadequately invoked.
> (citations omitted)

*Levin* at 674-75.

The opinion in *C.C. v. Rashid*, 2024 U.S.Dist. LEXIS 231723 (D.Nev. Dec. 20, 2024) is in

accord with the *Levin* holding. In *Rashid,* the plaintiff had three different alleged handlers, in two

different states. The *Rashid* plaintiff argued that the emotional distress from being trafficked

prevented her from timely filing suit. In rejecting the *Rashid* plaintiff's argument, the court noted

that the duty to pursue rights diligently covered the time frame from the sex trafficking up to the

time of filing suit.[29] Rejecting the very allegations and arguments raised by the Plaintiff in this

case for equitable tolling, the *Rashid* court wrote:

> . . .Plaintiff alleges that "between her fear of her traffickers, her damaged self-
> image, her trauma-primed emotional responses, and her impoverished living
> situation, [she] spent years unable even to conceive of taking any action against
> those who gained from her abuse." (FAC ¶ 268). Moreover, in Plaintiff's
> Omnibus Response, she alleges that "her emotional distress from being sexually
> abused is severe enough to have limited her ability to exercise her rights."
> (Omnibus Resp. 19:15-16). While the Court sympathizes with Plaintiff, these
> allegations do not demonstrate extraordinary circumstances that prevented her
> from timely filing. Moreover, Plaintiff does not describe what efforts she took
> to diligently pursue her claim.

*Rashid* at *23.

---

[28] *Id.* at n16, (citing *Stevenson v. City of N.Y. Dep't of Corr.*, 2011 U.S. LEXIS 166468 (E.D.N.Y. July 11, 2011)
(collecting cases), *aff'd sub nom. Stevenson v. N.Y.C. Dep't of Correction,* 489 F.App'x 517 (2d Cir.2012)).
[29] *Rashid* at *22 (citing *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir.2020).

17

In our case, Plaintiff had no contact with her handlers after she left them; plaintiff went back to working in the nursing home business and has been operating a successful remodeling business with her husband for over four years (229), and between each hiatus she had from a handler she had a cell phone and could communicate with her family and friends. (129-30, 137). No genuine dispute exists on the Plaintiff's failure to diligently exercise her legal rights and on the lack of any extraordinary circumstances that prevented her from exercising such rights. Plaintiff cannot discharge her burden of proof for invoking the equitable tolling rule. Equitable tolling will apply in this case; the court should grant summary judgment on this exception to limitations.

<u>Continuing Tort/Violations Doctrine Will Not Extend Limitations Period</u>

The continuing tort/violations doctrine defines the accrual date as the date repetitive wrongful acts cease, as opposed to the legal-injury rule, which defines the accrual date as the date a wrongful act causes a legal injury. In the TVPRA cases of *Christina T. v. Bellagio,* 2025 U.S.Dist. LEXIS 205896 **7-8 (D.Nev. Oct. 17, 2025) and *Doe v. G6 Hosp., LLC,* 2025 U.S.Dist. LEXIS 76546 *10-11 (W.D. Wash. Apr. 22, 2025)[30] the courts noted that the Supreme Court had severely limited the continuing tort/violations doctrine for federal-based claims to specific employment-discrimination cases:

> Lastly, plaintiff maintains that the "continuing tort" or the "continuing violation" doctrine—normally applied in the context of Title VII employment-discrimination cases—applies. . . . The Ninth Circuit has recognized two applications of the continuing violations doctrine: "first, to 'a series of related acts, one or more of which falls within the limitations period,' and second, to 'the maintenance of a discriminatory system both before and during [the limitations] period.'" *Id.* (quoting *Gutowsky v. County of Placer, 108 F.3d 256, 259 (9th Cir. 1997)*).
> The Supreme Court limited the continuing violations doctrine in *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)* to its current state where "little remains of the continuing violations doctrine" outside of specific employment-discrimination issues. *Bird, 935 F.3d at 748*. *Bellagio,* at **7-8.

---

[30] *Accord Doe v. Six Continent Hotels, Inc.*, 2025 U.S.Dist. LEXIS 122938 (C.D. Cal. June 26, 2025).

In *Morgan*, the Supreme Court described this distinction between a specific employment-discrimination claim that warranted application of the continuing tort doctrine and all other discrete act federal claims like the TVPRA that did not :

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. . . . The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)* ("As we pointed out in *Meritor [Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)*,] 'mere utterance of an ... epithet which engenders offensive feelings in a[n] employee,' *ibid.* (internal quotation marks omitted), does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts.

*Morgan*, 536 U.S. at 115. Unlike employment-discrimination, sex trafficking implicates discrete acts, each discrete act can be actionable on its own. Accordingly, the limitations defense applies independently to each alleged trafficking act, and a plaintiff can only recover for trafficking acts that occur during the limitations period. A TVPRA claim will not invoke the continuing tort/violations doctrine.

<u>Limitations Conclusion</u>

Because a TVPRA claim presents alleged discrete actionable conduct, the legal-injury rule controls a TVPRA claim's accrual date. Each discrete alleged sex trafficking act triggers a TVPRA claim and constitutes a separate accrual date. Accordingly, a ten-year limitation period applies to each sex trafficking incident asserted by the Plaintiff. Section 1595(c)'s plain language also precludes application of the discovery rule:  "no action may be maintained …unless commenced **<u>no later</u>** than . . . 10 years after the **<u>cause of action arose</u>**." Equitable tolling will provide the Plaintiff with no relief from the limitations bar either, as the Plaintiff cannot create any genuine dispute on her failure to diligently pursue her rights and on the existence of extraordinary

circumstances that prevented her from exercising her rights. In like manner, because the Plaintiff's TVPRA claims reflect discrete claims, the continuing tort doctrine will not apply, and the law will not extend the accrual date to the date the alleged wrongful conduct ceases.

Once the plaintiff suffers an alleged legal injury the limitations meter starts running. Plaintiff cannot maintain a TVPRA claim for any conduct predating December 1, 2013 – ten years before the Plaintiff filed her complaint (Dkt. 1). All claims related to the Plaintiff's first two alleged handlers are barred. Plaintiff testified her contact with her first handler ceased in September 2013 and her contact with her second handler ceased in October 2013. Plaintiff has failed to present any corroborating evidence of her being at the A&D Hotel between December of 2013 and February 2, 2014. The only evidence of Plaintiff being involved in commercial sex from December 2013 through February 2014 is the arrest report from the Days Inn (019). Nothing in the call logs from the Austin PD and the independent investigation of the call log reports for A&D show any sex trafficking activities at the A&D hotel at any time.

## CONCLUSION

Plaintiff has no evidence to create a genuine dispute on each of the four material facts of a TVPRA beneficiary liability claim. Plaintiff has no evidence of ever being at the A&D hotel, of A&D participating in a venture regarding her trafficking, of A&D having knowledge of her trafficking, or of A&D witnessing force, fraud or coercion relating to her. A&D has also shown the lack of a genuine dispute regarding the absence of each of these four material facts. A&D has also shown the lack of a genuine dispute on each material fact of its limitations affirmative defense. Accordingly, multiple grounds exist for granting A&D summary judgment on the Plaintiff's one remaining claim.

Respectfully submitted,

BURT BARR & ASSOCIATES, L.L.P.

By:     /s/ M. Forest Nelson
        John Holman Barr
        SBN: 01798700
        M. Forest Nelson
        SBN: 14904625
        P. O. Box 223667
        Dallas, Texas  75222-3667
        (214) 943-0012
        (214) 943-0048 Fax
        jbarr@bbarr.com
        fnelson@bbarr.com

COUNSEL FOR A&D HOTEL LLC

## CERTIFICATE OF SERVICE

On December 9, 2025, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ M. Forest Nelson
M. Forest Nelson

21